[Sac. No. 4028.  In Bank.—July 31, 1928.]

GEORGE QUIST et al., Respondents, v. EMPIRE WATER COMPANY, Appellant.

Scarborough & Bowen for Appellant.

Clark Clement and M. L. Short for Respondents.

TYLER, J., *pro tem.*—Suit to enjoin and to restrain defendant corporation from disposing of certain shares of stock in a water system and the water and water rights represented thereby.

The complaint is somewhat voluminous. The facts show that in 1902 defendant, Empire Water Company, hereinafter designated as the Water Company, acquired certain water rights and a system of irrigation and diverted from Kings River waters for irrigation and other purposes. In January, 1906, the Empire Investment Company, hereafter described as the Land Company, was the owner of a large tract of land, comprising some 18,712 acres, situated in Kings County, which it desired to subdivide for purposes of sale. The Land Company at the same time owned 8⅝ shares of capital stock in a company known as the Lemoore Canal and Irrigation Company, hereinafter designated as the Canal Company, which shares it conveyed to the Water Company as a part of and to carry out the scheme of subdivision. On the 8th of January, 1906, the Land Company, for the purpose of furthering its plan, entered into a certain agreement with the Water Company. This agreement sets forth the ownership of the real property by the Land Company and it recites that all of said lands are riparian to Kings River; that the Water Company is the owner of a complete water distribution system over and through said tract of land by means whereof the entire tract is irrigable; that the Water Company also has the right, as the agent of the Land Company, to take from the said river the water to which the lands of the tract are entitled as riparian to the river and to distribute the same to the lands through its water system; that the Water Company owns 8⅝ shares of the capital stock of the Canal Company, and the water to which said shares are entitled. The contract then provides that both the Land Company and the Water Company mutually desire to create, establish, and maintain a binding and permanent arrangement whereby the water system shall be properly maintained, and that all the water of both companies, through and by means of such system, be perpetually delivered and distributed to all the land owners of said tract by said Water Company, and that in the delivery and distribution thereof, such available water shall be prorated and divided to each subdivision in certain proportionate shares, at the rate of one dollar per acre. It further provides that the rights and benefits granted and the duties and liabilities imposed upon each purchaser shall remain appurtenant to and binding upon each subdivision and not

to be separated except by written agreement by the interested parties. On the day the contract was made the Land Company, by deed, conveyed to the Water Company all of its ditches, canals, weirs, and rights of way over the lands. The deed contained a provision which empowered the Water Company, as agent of the Land Company, to take the water of Kings River flowing over the lands or to which such lands were entitled and to distribute the same over the tract through the system of the Water Company in accordance with the terms of the contract made between the parties. The deed expressly provided, however, that it was not the intention of the Land Company to convey to the Water Company any riparian or water rights, but that such waters and water rights in said river to which said lands were entitled by reason of their riparian character should remain a part of and be appurtenant to said lands, the Water Company having only the right to take and distribute the same as the agent of the Land Company and its assigns and successors in interest. Then follow allegations to the effect that all the lands described in the complaint are agricultural in character and have been used for raising crops and other purposes and cannot be so used without irrigation or without the use of the $8\frac{5}{8}$ shares of the capital stock of the Canal Company. Under this arrangement the lands were sold, and each and every parcel conveyed by the Land Company to plaintiffs or their predecessors in interest contained the recital that the Land Company granted to the purchasers all appurtenances, water and water rights thereunto belonging, including that proportion of the waters of Kings River to which the tract owned by the grantor was entitled as riparian to the river, subject, however, to the rights and privileges of the Water Company under its contract with the Land Company. The complaint then charges that the Water Company, in violation of the rights of plaintiffs and for the purpose of depriving them of the benefits of the $8\frac{5}{8}$ shares of the capital stock of the Canal Company and of the water which plaintiffs are or may be entitled thereunder, is attempting to sell to a neighboring irrigation district the said shares of stock and the water rights represented thereby for the sum of $69,000, and, unless prevented, such sale will be consummated, and the waters diverted, to the irreparable damage of plaintiffs. It is then

alleged that plaintiffs have no plain, speedy, or adequate remedy at law and an order is prayed for permanently restraining defendant from selling to the Irrigation Company the shares above referred to. Defendant company, by answer, admitted, with certain qualifications, all of the averments of the complaint. It denied the allegations to the effect that defendant threatened and was about to sell the water stock, or that such act would cause plaintiffs irreparable injury by depriving their lands forever of the water represented by the shares in question, and it also denied that plaintiffs have no speedy and adequate remedy at law. The action was tried and findings made in favor of plaintiffs and judgment was entered restraining defendant from selling said shares of stock or the water or water rights obtained thereunder. It is here claimed that the evidence is insufficient to justify certain of the findings. The portions objected to are, in substance, as follows: (1) That the Water Company was the mere agent of the Land Company and its successors and assigns for the purpose of distributing water represented by the shares of stock; that it held title to such stock as trustee, and plaintiffs own a *pro rata* interest in such shares; (2) that defendant Water Company is about to sell and transfer such shares and the water rights and use thereof represented thereby; (3) that the sale will cause irreparable injury by depriving plaintiffs' lands forever of the use of the water represented by the shares of stock; (4) that plaintiffs have no plain, speedy, or adequate remedy at law.

Defendant, appellant herein, contends that it is the owner in fee of its water system and the shares of stock in the Canal Company, together with the water rights attached thereto, and does not hold such property as trustee or in trust for plaintiffs, but does, on the contrary, own and operate the entire system subject only to the duty or obligation to furnish and deliver water to plaintiffs' lands upon the payment of the water rate provided for in the water contract. There is no merit in this claim. Upon this subject, as pointed out in the findings, the record shows that the parties stipulated at the trial that each of the plaintiffs had a substantial interest in and right to the use of the waters obtained by the defendant under the shares of stock in question, and that such right or interest is legally, and

also by virtue of the contract, appurtenant to the lands owned by each of the plaintiffs. The water agreement and the deed under which the Land Company transferred its ditches and the shares of stock in the Canal Company in order to carry out the scheme were also in evidence. By the terms of these instruments the water which defendant company was obligated to supply was of two sorts; that deliverable upon the stock of the Canal Company and that which was riparian to the land. No distinction whatever was made in the contract between the riparian and canal waters. Under the water agreement defendant company was expressly made the agent of the land owners for the purpose of distributing the riparian waters, and it was manifestly the intention of the parties when the land company transferred to defendant the water shares for the use and benefit of its lands, and as appurtenant thereto, to likewise make it its agent as to these waters for the same purpose. No distinction whatsoever is made in the contract as to the different sorts of waters, they being referred to throughout the contract as the waters. Both sorts of waters being appurtenant to and part of the land itself, defendant has no interest or title therein other than its right to convert and distribute them in conformity with the terms of its agreement. Having no interest or title in or to the waters it is beyond its power to make any legal conveyance of the same. Upon this subject the court found defendant to be the mere agent of the Land Company for the purpose of distributing the waters in accordance with the agreement. It also found that the effect of the agreement was to make defendant a trustee of the water stock and to clothe it with the mere naked legal title for the use of the beneficial owners. The evidence fully supports this finding, which finding is in accord with the conclusion of this court in *Stratton* v. *Railroad Com.*, 186 Cal. 119, 122 [198 Pac. 1051], where it had occasion to analyze this identical contract. The view was there expressed that defendant company was a mere instrumentality for the purpose of diverting and distributing the waters to which the owners were entitled under the terms of their agreement with the Land Company. Nor does the fact that the duty or obligation which was imposed upon the Water Company was likewise imposed upon "its successors and assigns" give rise,

as claimed, to any different conclusions. By the employment of the term in question it was manifestly the intention of the parties to have the successors or assigns of the Water Company bound by the agreement in the event of a sale of its water distributing system, a duty that the successors were required to perform irrespective of this covenant if they bought with notice. (*Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 [15 L. R. A. (N. S.) 359, 93 Pac. 858] ; *South Pasadena* v. *Pasadena Land Co.,* 152 Cal. 579 [93 Pac. 490].)

Equally without merit is the claim that there is no evidence to support the finding that defendant Water Company is about to sell and transfer to an irrigation company the shares in question and the water rights and use thereof represented thereby. It appears therefrom that there are 53 shares of stock in the Canal Company, including the shares in question, and that there is a tentative agreement existing for the sale of the same to the Irrigation Company at $8,000 per share or $424,000 for the entire issue. The court found it to be the intention of the Canal Company by the sale to divert the water represented by the shares upon lands other than the tract in question, and this is the only reasonable inference that can be drawn from the testimony. Nor is there any merit in the further claim that such diversion would not cause irreparable injury to plaintiffs, or that plaintiffs have a plain, speedy, and adequate remedy at law. It was stipulated at the trial that the question of damages was not to be considered. The case was tried under the stipulation, upon the theory that if the plaintiffs could be or would be deprived of the water appurtenant to their lands by the sale of the water stock by the defendant, the plaintiffs, and each of them, would suffer very serious damage sufficient to justify the issuance of an injunction, and there was evidence to show that without the waters represented by the shares there would be an insufficient supply to irrigate the lands in question. It is plain under all the circumstances of the case that *mandamus* would be an inadequate remedy to plaintiffs because of the fact that their rights to a perpetual water right could not be adjudicated in such a proceeding. (*Townsend* v. *Fulton Irr. Dist.,* 17 Colo. 142 [29 Pac. 453].) The undoubted purpose of plaintiffs is, by this proceeding, to obtain a judgment settling their rights so as to determine

for all time any claims and contentions that may arise in the future. To such a decree they are entitled. The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view. (10 Cal. Jur., sec. 10, p. 467.) It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future. Otherwise, equity will interfere and give such relief and aid as the exigencies of the case may require. (*Dingley* v. *Buckner*, 11 Cal. App. 181 [104 Pac. 478].) Here the action is one primarily to prevent a sale of trust property. It may be conceded that defendant is entitled to sell its water system, but it has not authority to sell the shares therein owned by plaintiffs or the water and water rights represented thereby, which it does not own, and which are appurtenant to plaintiffs' lands.

The judgment restraining such sale is hereby affirmed.

Waste, C. J., Richards, J., Curtis, J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.

All the Justices present concurred.